21-2922. Hold on. Hold on a second. Don't take it personally. Go ahead. Please proceed. May it please the court, Johnson-Skopolis, on behalf of Appellant Brittany... Hold on one second. Sure. Counsel, can you please sit down? Thank you. Go ahead. Yes, Attorney Johnson-Skopolis, on behalf of Appellant Brittany Biener, who also happens to be here today. This is a, even though it's a motion to dismiss, it's a pretty complicated case. There's been a lot of spilled ink, so to speak. 60 pages by us, 60 pages by them, 30 pages on reply. I don't think we have enough time to talk about all the issues. I think it would be, unless I do that old FedEx commercial from the 80s, I don't think it's possible. So, what I'm going to talk about is I think the crux of the issue that got most of Mrs. Biener's claims dismissed, was I thought, I think, is a faulty analysis by the district court as to the statute of limitations. The district court's analysis basically says that Mrs. Biener should have been aware of a corporal punishment investigation in 2013. But with all due respect to the district court, there's very flimsy evidence, actually, in my opinion, very little evidence that there was ever, that she ever was properly notified of a corporal punishment investigation. And that, I'm glad you focused on that, because as far as I'm concerned, that's the only issue of the case. The only issue of the case is whether she got notice as required under 1983, and whether this amounts to, you know, enough to be a case on that. And the question then is, was what she was told, she was being brought in for, enough so that she could have done what she later did for other reasons in 2018, which is get the record of what happened. So, you know, it's just very simple. Did she have enough notice from that statement of you are being brought in, and you can bring, and discipline may follow, and you can bring your union, so that then when nothing happened, she knew enough to ask for what happened? Yeah, I'll be short. I believe the answer is no. She did not have notice. Legally, she didn't have proper notice. I don't even think she had notice on a commonsensical basis because this is a very limited record because it was dismissed, in my opinion, prematurely and hastily. But on the limited record we have- The question after as to whether there was stigma plus and so on is something that if we agreed with you that there wasn't adequate notice and the statute of limitation didn't run, we might send back to see because there may not be stigma plus or not. But I agree with you that that was- Okay, I was going to explain to you why I think that the judge was hasty. You've got to remember the record is flimsy, but here's one thing I will say. Mrs. Beaner was rated, by the way, it's the highest rating satisfactory and effective teacher that class year. She was able to teach that student for a remainder of two more weeks. There was no harm done immediately to her at that time. The question was, did she have notice that something might go into her record and so be able to look into it and say, hey, it was wrong to put this on my record. I don't believe so. I'll explain to you another reason. I'm sure you've read the briefs. Six weeks earlier she's called in for an absences conference. It's the same letterhead. You should bring a union representative. This might lead to a disciplinary conference. Mrs. Beaner never found anything regarding the absences, I guess, conference or ultimately what occurred. My point is, unless there's a sleeper issue, the absences thing is still floating out there. Mrs. Beaner left school on maternity leave thinking that she was a satisfactory, effective teacher. There was nothing to give rise that something wrong happened to her. She was not- Yes, ma'am. But, counsel, I just want to get a sense of timing. I'm concerned because I think both sides here. I'm not sure, but I think you all focused on the wrong regulations, in effect. So, the report of the corporal punishment was June 11, 2013, correct? There was no notice of corporal punishment, no. There was a conference. A hearing called on June 11. Well, there's a big difference, Your Honor. I mean, if you're saying- The client knew she was asked to bring a union representative to a meeting on June 19, correct? Yes, and she previously done it before, six weeks ago. Whatever you call it. I just want to get the timing. I'm not disputing what you call it. So, June 11, a call for a meeting, hearing, whatever that was. June 19 was the date of that meeting, 2013, correct? I believe so. You cite two regulations that require the school or the Board of Education to notify teachers of the results of the investigation, correct? You cite to those regulations? She is- Mrs. Buehler left the meeting apparently not believing she was in any trouble. Answer the question. I'm going to answer the question. With regards to the regulations, Mrs. Buehler has never received- I'm just explaining to you- No, no, no. I understand that she never- She's never received the actual findings. Counsel. I understand that. I'm not disputing that. So, I believe it's page four or five of the disciplinary regs that you cite to that would first require notice of the results of an investigation. Those didn't go into effect until July 19, 2013, exactly one month after the hearing in this case. The regulations that appear to have been in effect were regulations that were issued on June 24, 2009, because the ones you do cite to say these replace the regulations of June 24, 2009. Were you aware that in the old regulations, the employees were not entitled to any notice of substantiation of corporal punishment? In fact, those regulations simply say that notice of unsubstantiated corporal punishment is what's required. So, it doesn't appear that in the regulations, in effect, at the time of the hearing, there was any requirement on the city or the board of ed to notify your client. And if that's the case, how does that impact your argument? Well, I don't think it impacts it at all, to be honest with you. First of all, let's be open. Nobody briefed this issue. So, it's tough to talk about something on the fly, but I'll explain to you why I believe it doesn't affect our issue. Because we're taking a big jump here, and it's a big jump. When she goes to check her file in 2018, the statement, pushed and grabbed the student, which is the final statement that's imputed into the system, it's not even there in 2018. We really don't know when this finding took place. And I don't even want to call it a finding, because it doesn't have a whole- No, no, but isn't your argument that even if that regulation did not give rise to a right to notice, a right to notice before something which does affect stigma plus is required by 1983, that is your argument, instead of getting into an argument about the regulation, is it doesn't matter whether the regulation said that, because a regulation that didn't require notice before one did something like that would violate- Well, I've got a couple of seconds left, so I'm going to try to- Well, I also think I agree with some of the respects that you're talking about, but there's something else we all have to agree about. It's important to notice when the notice of this supposed finding, if it ever did occur, takes place, because that is when Ms. Biener, number one, has a duty to do something, right? And also, when she has an adverse- Well, but it is- Nobody walks around saying, I hope I'm in good shape. Look, it is impossible that something didn't go into her record- I disagree with that. At a time that was not before the statute of limitations, given that she first asked in 2018. Now, we don't know when it went into her record. Exactly. But it is inconceivable that this wasn't within the limits of the statute of limitations. Your Honor, every time she went back to her files, she found something new. Why are we giving them the benefit of the doubt? I'm rushing to dismiss the benefit of doubt should be with my client. That's the law of the Second Circuit. Wasn't the substantiation on June 20th, 2013, wasn't that the final sort of the results of the investigation, if you will, the following day? Because I thought that's what the records showed, but- She found something in 2019 when she went to go see her- No, no, no, I know that's when she found it. It's not my question. My question is, didn't the school make a final determination on its investigation the day after the hearing? Interviewed witnesses- As we state in our papers, I believe that's a disputed fact for a variety of reasons. First of all, she's accused of pushing and grabbing a student. That's akin to child abuse. How does she teach students for another year and a half if that actually was in her papers? I thought she only finished that year and then went on leave and didn't go back. No, no, she taught another year with the same student. She came back the following year. It's actually in his papers. He acknowledges it. She came back the next year and teaches the same student again. It makes no sense why Mrs. Bino would be thinking that she's in bad shape. It's like, you know, you have a service engine light on your car. It actually happened to me recently. That's why I thought of this analysis. I hope I'm not being corny, but my friend is a mechanic. Actually, he's my next door neighbor. I said, my service light engine's on the car. And he said, it's probably just bad guess. Let it go through your system. And he was right. Within a week, the light went off. I mean, with all due respect, Justice Calabresi, am I going to go to see my mechanic and look for the exhaust system, the transmission, to see if my axles are right? But she knew what they were investigating. She had no idea. This is the problem with analogies, you see. The problem with analogies is, in this analogy, she knew what's wrong with the car when she brings it in. So let's avoid analogies, but she did know what was being investigated, right? She thought that this was about a shoe exchange, which is not unusual because what happens is, and I try to explain it as best we can. These portfolios are owned by the school, and what happens is, if the kids take the portfolio, it's like- Your best argument is she was called in for something which might be an abuse of students. But the fact that after she was allowed to continue teaching meant this very student, for some time, meant that whatever happened there was not negative. And she had no notice that something negative was put in her file, and that she had a right to find out about. And she just learned of it by chance, many, many years later, therefore a statute. That's your argument. So stick with it. Don't get into- No, but I'm saying this. There's a jump, and I'm saying, with all due respect to the court, you keep jumping to a fact that nobody knows. We don't know when this was put in her file. Why do we keep giving them a favorable inference that- I think Judge Calabrese's question is meant to help you. I understand. But I'm also saying, I get it. But I'm also saying is that we keep jumping to the fact that we assume that this probably took place in June of 2013. But we don't know, really. We really don't know when this supposed finding took place. Let's hear from your friend on the other side, Mr. Young. Good morning. Good morning, Your Honors. May it please the court, Philip Young here on behalf of the New York City Department of Education. So I understand the focus of the argument here was on statute of limitations. I just want to point out that we have a whole host of substantive arguments on the merits in our briefs about why none of these claims state a cause of action. As to the statute of limitations point, Boehner's own allegations here show that she didn't act diligently to protect her rights in this case. She knew as early as June 2013 that she was being investigated by her principal for this incident where she allegedly removed a student's shoe. And then she had that disciplinary conference in on June 19th, 2013. She was advised that it could lead to disciplinary action. And she was advised that she could bring a union. Isn't that a standard thing when people are called in for anything? Isn't that the standard thing that the board gives people? So that when then nothing happens, a person has a right, at least that's their argument, to assume that this was treated as a shoe removal incident and not more. And that she had no duty to look further until many years later, she finds that there is something in her record which hasn't harmed her to date. But which could be stigma plus, could harm her in the future if she was looking for another job. That's their main argument. Now what I want you to do is tell me why that argument, some of which I made myself for them, I'm sorry, but there it is. Well, so your honor, that is certainly standard procedure when there is a disciplinary conference going on. And it's true that she didn't get information about the outcome of that disciplinary investigation. But any reasonable employee in her shoes would have followed up, would have asked the principal what happened about that, would have tried to gain additional information. She didn't do that. She continued teaching for another year, went on leave, and it was only in 2018 when she looked at her personnel file that she first discovered this. She never alleges that she couldn't have looked at her personnel file earlier. She never alleges that she couldn't have asked the principal about this. How often, how often do people who are called in for these things thereafter ask for their personnel files? Your honor. The record doesn't show it, but I'm kind of interested. It would be a much stronger case if people did all the time. It would be a much stronger case the other way if people never did. I don't know. Your honor, there's no allegations in here one way or the other. Certainly from a personal perspective, if I was brought in for a disciplinary conference, I would follow up and I would want to know what happened. But for the purposes of this case, there are... You're also a lawyer. That is true, your honor. That is true, your honor. But for purposes of this case, there are no allegations that she attempted to find out what happened and was rebuffed or DOE hid this information from her or anything like that. But she taught for one more year and then went on leave and came back or, according to the allegation, attempted to come back in 2020. Let's assume that her claim is not barred by the statute of limitations. Getting to the second issue, which is basically a detrimental or an adverse employment action, what was the... Your position is there was no adverse employment action because ultimately she was offered a position in the same school, not as a reverse? Well, so the allegations are a bit unclear, your honor. She alleges simultaneously that she was told that she would be accessed and offered to apply for a job. But get away from all that, much of which is nonsense, frankly. To the point that she is making, there is something in my record now that is there which harms me if I go to look for another job. And that is potentially stigma plus. That's the claim. I mean, they make any number of other claims of harm, but they ain't there. The claim of harm that is there, and it's there in the middle of everything else, is if I go look for another job, my record now has something in it which I was not able to fight and which harms me. So it's that that I want you to answer. Sure, your honor. So that is the claim presented in its best light. I think it's still insufficient to state a claim for two reasons. First of all, in this court's stigma plus jurisprudence, you hold that the stigma and the plus, the stigmatizing statement and the adverse employment action have to occur simultaneously, concurrently. Here there's a six-year gap, six or seven-year gap. And then second of all, this circuit has held that it's a pretty high bar for identifying what that plus is, this adverse employment type action. You know, it's loss of a job. It's loss of the right to a public education or something like that. It's not a situation like this where they are- Well, there is one opinion by me which leans most the other way. Whether I like it or not or I was right, I don't know about what is enough to be stigma plus. Well, I think regardless, your honor, it's not enough in this case because, again, she doesn't allege that she was fired. She doesn't allege that she was demoted. She doesn't allege that she made efforts to apply to other positions in the DOE and that those failed. I agree with you that there is not enough to say that. Is there enough to say that a dismissal without looking further into whether there is stigma plus is justified? Well, your honor, I don't think in her allegations she says that she was dismissed from the DOE. No, no, no. She wasn't dismissed. But just to say now there is this claim that there is this in my file and that this is harmful and so on. So let's do depositions or things to see whether this is going to be harmful or so on. No, your honor. I don't think any of those allegations rise to the level of a stigma plus claim for all the reasons that we stated in our briefs and based on the cases that we cited in our briefs. Yeah. Okay. Thank you. Thank you very much. Thank you, your honors. Counsel. So, to a certain extent, counsel is making my point. What he's talking about is that Mrs. Beener did not exercise supposed appropriate diligence. With regard to Mrs. Beener, she left, like I said before, and I don't want to be a dead horse, but she left as a satisfactory effective teacher for two years in a row during the supposed incident. The reasonable diligence, as we cite in our briefs, is always an issue of fact that requires, as Justice Calabresi was mentioning, further discovery. I'm not saying you're requiring further discovery, but that's usually what happens to see if there's diligence. That could happen in discovery. No, no, no. Could you address the question of whether, assuming this is timely, there is sufficient claim of stigma plus harm so that we should look further? Well, as I was going to explain, I don't believe we know right with, and I'm not trying to avoid the question, we really don't know when she was accessed because they say she was supposedly going to be accessed in September. But if you read the record, you're supposed to be accessed in June. She may have been accessed much earlier, and only what they have is their own allegation. That isn't linked to this at all. I want to know why this thing in her record might amount to stigma plus. Because I don't believe it's conjectural. I believe if you work with students and you're a teacher of students and you're accused of assaulting a student, which ultimately this is, I think your chances of job prospects are nil. But doesn't the fact that she was allowed to stay a year, you just pointed out, she was allowed to teach for a full year, the same student, kind of go against the stigma point? No, I think it goes to our claim that this was a fraud. This was a well-orchestrated fraud. I get that, but doesn't it also show that maybe this blemish, if you will, on the record would not negatively impact her? And particularly if the record were to show that she was given the job back in 2020 or- Well, she never really got her job back. I thought she was offered and then resigned. She was offered to be accessed, but when she was going to attend the supposed reserve teacher pool, she was never told where to go and she was getting unauthorized absences. If she got, I believe, a few more- She wasn't called to go back to the same, very same school? No, she was not. She was told to come back to be in the reserve pool. When you're accessed, it means there's no spot for you. There's no spot for you in that school, but you can go to another school if you timely show that you're looking for more work. But how does any of that suggest that she was being maltreated because of a claim of abusing a student? I mean, you know, if you go to another school as a special education teacher, that may not be convenient, that may be harmful, that may be any number of things, but it doesn't say anything about whether you've been found guilty of abusing a student. I mean, why would they let her go to another school to abuse a student if she's been found guilty of abusing a student? Well, technically, we find out later that she was supposedly found to have assaulted that student, so it's not speculation. It did pop up on her record much later. But I want to talk about one other thing which you just raised. You're saying, when did this adverse event occur? I believe that's what you're trying to get at with regards to the stigma plus. And my argument is we technically really don't know because the record is very barren, but also a demotion or a firing is not always needed. You can have an admonition, you could have a loss of job duties, you could have a loss of title. The Second Circuit says explicitly we have never defined what an adverse employment action is. And with that in mind, I think we need more discovery here to see if this is technically an adverse action. And quite frankly, the Second Circuit usually says you need more discovery at this phase and recite the case law. You generally need to know where she stood at that point. And right now, we just know something was placed in her file. We don't know exactly when. To say it was done in 2013 or 2014, I think, is a bit absurd. But we still don't know when it was placed in. It's just giving an inference to their favor to say it was put in 2013. And all inferences are supposed to be in Mrs. Beaner's favor. Thank you for your time. Much appreciated. Thank you very much. We'll reserve the decision.